AO 106 (Rev. 04/10) Application for a Search Warrant



# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

NOV 1 2 2019

SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black/Grey in color iPhone,
Cell Phone Number: (619) 971-6689

)
)
)
)
)
)

Case No. **19MJ5024**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1591 | Sex Trafficking of Children |
| 18 USC 2422(b) | Enticement of a Minor |
| 18 USC 2423(a) | Transportation of a Minor |

The application is based on these facts:

See Attached Affidavit of FBI Special Agent Jonathan Reynolds, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan Reynolds, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11/12/2019**

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Andrew G. Schopler, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

Black/Grey in color iPhone,
Cell Phone Number: (619) 971-6689
(Referred to as **Target Device**)


**Target Device** is currently stored at the San Diego Human Trafficking Task Force, San Diego, 9425 Chesapeake Drive, San Diego, CA 92123, in the Southern District of California.

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of <u>July 1, 2019, up to and including August 14, 2019</u>:

a. tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, or maintain a person for the purposes of engaging in a commercial sex act;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate human trafficking;

c. tending to identify co-conspirators, criminal associates, or others involved in human trafficking;

d. tending to identify funding sources, bank accounts, and financing methods involved in human trafficking;

e. tending to show efforts to solicit commercial sex acts on websites including but not limited to backpage.com or craigslist.com;

f. tending to identify travel to or presence at locations used for commercial sex acts;

g. tending to identify the user of, or persons with control over or access to, the subject phone; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 1591, 2422(b), and 2423(a).**

The seizure and search of the cellular phones shall follow the procedures outlined in the methodology section in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phones may be searched for the evidence above.

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jonathan A. Reynolds, Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by the San Diego Human Trafficking Task Force (SDHTTF) for the following electronic device: a Black/Grey in color Apple iPhone, Phone number 619-971-6689 (**Target Device**) as described in Attachment A, which was seized from Joseph PRICE following his arrest on August 14, 2019, and seize evidence of crimes, specifically violations of federal offenses under 18 U.S.C. §§ 1591, 2422, and 2423, as described in Attachment B.

2.      Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes.

3.      The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Device**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

//

//

1

1

## EXPERIENCE AND TRAINING

2      4.      I am an investigative or law enforcement officer within the meaning

3   of Title 18, United States Code, Section 2510(7); that is, an officer of the United

4   States, who is empowered by law to conduct investigations of and to make arrests

5   for offenses enumerated in Titles 18 and 21 of the United States Code.

6      5.      I am a Special Agent ("SA") with the Federal Bureau of Investigation

7   ("FBI"), United States Department of Justice. I have been employed by the FBI

8   since March of 2017, and I have participated in investigations involving violent

9   crimes, bank robberies, human trafficking, child exploitation, organized crime,

10  drug trafficking, and money laundering activities. I also received twenty-one

11  weeks of training at the FBI Training Academy in Quantico, Virginia. During that

12  training, I received instruction regarding a wide variety of investigative techniques

13  that are commonly used in support of a wide range of the FBI's investigative

14  priorities. The training included instruction regarding the use of sources, electronic

15  surveillance techniques, law enforcement tactics, search and seizure laws and

16  techniques, physical surveillance, forensic techniques, interviewing, and a variety

17  of other subjects. Currently, I am assigned to the FBI San Diego Headquarters,

18  Human Trafficking-1, in San Diego, California to work crimes against children,

19  specifically, the sexual exploitation of children to include various illicit

20  commercial sex activities.

21      6.      Prior to my employment with the FBI, I was employed as a Police

22  Officer with the Mount Pleasant Police Department in Charleston, South Carolina.

23  I graduated from the South Carolina Criminal Justice Academy in Columbia, South

24  Carolina in May 2013. During my four years as a Police Officer, I received training

25  in various forms of investigations to include child exploitation, narcotics, and gang

26  investigations. As a Police Officer and SWAT operator I assisted and participated

27

in the execution of numerous search and arrest warrants, many involving narcotic and gang related offenses as well as child exploitation.

7.      In October 2017, I was assigned to the East County Regional Gang Task Force ("ECRGTF"). The San Diego County Sheriff's Department appointed me an Associate Agent assigned to the Sheriff's Department Special Investigation Division and specifically assigned to the ECRGTF. During my time at the ECRGTF, I had personal contact with dozens of self-admitted or known gang members and their associates and have discussed their lifestyles, method of operations regarding violent and property crimes, organizational methods, and their drug trafficking and drug distributing activities.

8.      Since August 2019 I have been assigned to the SDHTTF where I have participated in investigations involving the exploitation of children for illicit commercial sex activity, human trafficking, various illegal activity of criminal gang members and have performed a variety of related investigative tasks. During my career I have conducted a multitude of investigative activities including, but not limited to:

a.      Supervising as a case agent/co-case agent investigations involving organized criminal street gangs, the trafficking of drugs, weapons, the laundering of monetary instruments, the trafficking of human beings, and the exploitation of children for illicit commercial sexual acts;

b.      Functioning as a surveillance agent and thereby observing and recording movements of persons involved in criminal street gang activity and those suspected of committing violent crimes, exploitation of children for illicit commercial sex activity, and trafficking in illegal drugs and weapons;

c.      Interviewing witnesses, cooperating individuals, and informants relative to the illegal activities conducted by organized gang members to include the exploitation of children for illicit commercial sex activity, narcotics sales, money laundering, drug trafficking, weapon sales and trafficking, commission of violent acts, racketeering, intimidation, extortion, human trafficking, and environmental crimes;

d.     Participating in the tracing of monies and assets gained by criminal street gang members from the illegal commercial sexual activity, sale of drugs (laundering of monetary instruments) and weapons;

e.     Monitoring and reviewing thousands of recorded jail calls as well as recorded telephone calls pursuant to Title III court orders in child exploitation, narcotics and gang-related cases as well as handled Confidential Human Sources with access to drug dealers, firearms dealers, gang members and various gang hierarchies; and

f.     Participating in investigations involving illicit commercial sexual activity, purchases of controlled substances, purchases of weapons, the execution of search and arrest warrants, surveillance in connection with criminal investigations, and the interview of confidential sources.

9.     My experience as an FBI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

10.    Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a.     Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

b.     Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

4

c.   Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

d.   Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution;

e.   Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution;

f.   Individuals involved in illicit commercial sex use cellular telephones, tablet, desktop, removal hard drives and flash drives, and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, tablet, notebook computers, and removable storage media to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet based correspondence. Individuals involved in illicit commercial sex will use multiple cellphones, tablets, notebook computers, and phone numbers in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution. Moreover, I know that digital evidence can be stored on a variety of systems and storage devices including: hard disk drives, DVD ROMS, pagers, money chips, thumb drives, flash drives, and portable hard drives;

g.   Individuals involved in illicit commercial sex use social media sites like Facebook or Instagram to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging,

5

electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution;

h.    Individuals involved in illicit commercial sex often drive vehicles, sometimes rented, leased, or registered in the names of other people, to transport themselves and coconspirators, inter and intra state, to pre-arranged meetings with clients to engage in prostitution. These same individuals often get other persons to rent hotel rooms, pay for online postings or other items to avoid detection.

11.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal activity described above in paragraphs "a" through "h" is maintained by individuals involved in illicit commercial sex in property that they and their associates live in and operate as well as on online accounts as well as email accounts, which can be accessed on computers and cellular telephones.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

12.    On August 13, 2019, the mother of a minor female, aged 15 ("MF"), reported to the San Diego Police Department (SDPD) that she had observed her daughter in a vehicle driven by an unknown male near Euclid Avenue in San Diego, California. Although she did not know the name of the man MF was with, she recognized him as an adult male who had previously picked up MF at her home. She further stated that she had seen Snapchat[1] photographs and videos of her daughter with this same man.

13.    Later on August 13, 2019, MF's mother reported to the San Diego Sheriff's Office (SDSO) that she was able to use Snapchat to geo-locate her

---

[1] Snapchat is a social media application, accessed via cellular telephone, whereby users can share photos, videos, and text conversations.

daughter to a home in El Cajon, California. Deputies from SDSO's Alpine Patrol Station searched law enforcement databases and found that the home was associated with PRICE, who was on parole for first degree burglary. MF's mother also provided deputies with the Snapchat photographs of MF. Due to the provocative nature of those photographs, Deputies believed that MF might be a victim of sex trafficking. SDSO deputies compared photographs of PRICE from his California parole records to the photographs provided by MF's mother and determined that they were the same individual. SDSO and the SDHTTF jointly initiated an investigation in order to recover MF.

14.    On August 14, 2019, MF was located and questioned. She stated that PRICE had dropped her at the house where she was found. Using Snapchat, PRICE was geo-located and arrested pursuant to California Penal Code 3056 pending further investigation into potential violations of his parole. TFO A. Lewis assisted in PRICE's arrest and removed an Apple iPhone from on his person. Incident to the arrest, TFO Wells used the Emergency Call feature on the iPhone and obtained the phone's cellular number of 619-971-6689 (the **Target Device**).

15.    Also on August 14, 2019, TFO B. McGilvray, using law enforcement databases, located an advertisement posted on July 12, 2019, in San Diego, California on the website "megapersonals.com" offering commercial sex with MF. These advertisements depicted photographs of MF similar to those contained in her Snapchat photographs and provided the telephone number 619-XXX-7750 as a contact phone number.

16.    On August 14, 2019, MF was interviewed by TFO Wells and TFO M. Stevens. MF confirmed that the telephone number 619-XXX-7750 belonged to her until approximately August 7, 2019. She identified PRICE as her boyfriend and stated they have been dating for one month. She claimed that they had been talking,

1   text messaging, and "FaceTiming[1]" for the past few months. MF stated that
2   although she initially claimed to PRICE that she was seventeen years old; MF's
3   mother told PRICE that MF was fifteen. According to MF, PRICE then had a
4   conversation with MF about her being fifteen, and lying about her age, and
5   ultimately told her it was ok.

6       17.    TFO Wells asked MF about the megapersonals.com advertisement.
7   MF stated that PRICE had asked her to "do this thing for me," and told her to post
8   the advertisement to get money for him. According to MF, PRICE requested MF
9   send him some photographs of herself. MF sent PRICE photographs of herself
10  using her cellular telephone, and when "johns" (purchasers of commercial sex)
11  would text MF in response to her advertisement, PRICE would conduct all text
12  message negotiations, including pricing, using a texting application "TextNow."
13  According to MF, PRICE would pick MF up from her mother's house in San Diego
14  County and would then drive her to meet with johns elsewhere in San Diego
15  County, often at their homes or in their cars. While she engaged in commercial sex
16  with the "johns," PRICE would park down the street and wait. In total, MF
17  estimated she had eleven "dates," or eleven instances in which she provided sex to
18  buyers. MF verified that on ten out of eleven of these "dates" she engaged in some
19  type of sex act. The sex buyers always handed her the money, and she would then
20  give the money to PRICE. In total, MF estimated she earned $7,000 from
21  prostitution. She stated that PRICE took all the money.

22      18.    MF provided to TFO Wells the names associated with her social
23  media accounts as well as those belonging to PRICE. In particular, she stated
24  PRICE's Snapchat screen name is "King Flow." MF stated that she communicates
25
26
_____
27  [1] Video telephone calls between iPhone cellular telephone users.

with PRICE through Instagram and Snapchat using direct messaging. MF also consented to the download of her cellular telephone.

19.   On August 14, 2019, TFO Wells performed a logical download of MF's telephone. In reviewing the downloaded information, the Textnow texting application MF referred to in her statement was observed. The number associated with the Textnow application was 619-XXX-3900. Using this phone number, TFOs searched law enforcement databases and discovered multiple prostitution advertisements, posted to Megapersonals.com from July 21, 2019 to August 6, 2019, that contained photographs of MF, including some that used the same photos of MF used in the other advertisement linked to her phone number 619-XXX-7750.

20.   On MF's phone, within her "chats," was a Textnow conversation with the **Target Device** that began on July 27, 2019. The conversation began with the message "king flow new number." Also within the "chats" on MF's phone, MF directs a "john" to send her $40 to the account "$kingflowthee," and tells him it is an account belonging to her uncle. However, based on the name match with PRICE's Snapchat Account, and the name match with the text message from the **Target Device**, in addition to the statements provided by MF, I believe that the "john" was being directed to send the money to PRICE.

21.   Based on my training and experience, and consultation with law enforcement agents who have training and experience investigating sex trafficking offenses, I know that individuals will often utilize cellular devices to communicate with customers and individuals involved in prostitution. Similarly, multiple social media accounts are commonly used to make contact with minors and adults to persuade and induce them into engaging in sex trafficking by communicating using Snapchat as described above and are often accessed by these cellular devices. Based on the facts of this case, I believe that evidence of sex trafficking of children, coercion and enticement, and transportation and travel with intent to engage in

9

criminal sexual activity, in violation of 18 U.S.C. §§ 1591, 2422, and 2423, will be found on the **Target Device**. Additionally, the search of the **Target Device** may also identify other individuals engaged in sex trafficking of children and adults, coercion and enticement, and transportation and travel with intent to engage in criminal sexual activity. I respectfully request permission to search the **Target Device** for items listed in Attachment B from July 1, 2019 up to and including August 14, 2019.

## METHODOLOGY

22.   It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject

1   to forensic data acquisition or that have potentially relevant data stored that is not

2   subject to such acquisition, the examiner must inspect the device manually and

3   record the process and the results using digital photography. This process is time

4   and labor intensive and may take weeks or longer.

5       23.    Following the issuance of this warrant, I will collect the **Target**

6   **Device** and subject it to analysis. All forensic analysis of the data contained within

7   the **Target Device** and its memory cards will employ search protocols directed

8   exclusively to the identification and extraction of data within the scope of this

9   warrant.

10      24.    Based on the foregoing, identifying and extracting data subject to

11  seizure pursuant to this warrant may require a range of data analysis techniques,

12  including manual review, and, consequently, may take weeks or months. The

13  personnel conducting the identification and extraction of data will complete the

14  analysis within ninety (90) days, absent further application to this court.

15                    **GENUINE RISK OF DESTRUCTION OF DATA**

16      25.    Based upon my experience and training, and the experience and

17  training of other law enforcement agents with whom I have communicated,

18  electronically stored data may be permanently deleted or modified by users

19  possessing basic computer skills. In this case, no genuine risk of destruction exists

20  as the property to be searched is already in the custody of law enforcement

21  personnel.

22                       **PRIOR ATTEMPTS TO OBTAIN DATA**

23      26.    The United States has not attempted to obtain this data by other

24  means. A download of the data from the Target Device was done incident to

25  PRICE's arrest for violations of his California state parole; however, that download

26  has not been accessed by the undersigned nor is it a basis for my belief that

27  probable cause exists to forensically search the Target Device.

11

1

## CONCLUSION

2    27.    Based on the foregoing, I believe there is probable cause to believe

3 items that constitute evidence, fruits, and instrumentalities of violations of federal

4 criminal law, namely, 18 U.S.C. §§ 1591, 2422, and 2423 as described in

5 Attachment B, will be found at the properties to be searched, as provided in

6 Attachment A.

7

8                                         Jonathan A. Reynolds
                                          Special Agent
9                                         Federal Bureau of Investigation

10

11 Subscribed and sworn before me this _____12th_____ day of November, 2019.

12

13

14                                        HONORABLE ANDREW G. SCHOPLER
15                                        United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27